1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10          CENTRAL DISTRICT OF CALIFORNIA
11
12
13
14
15   RAMIRO QUILES,                    )   No. CV 06-5232-VBF (JWJ)
                                       )   *Amended.*
16                  Petitioner,        )   ORDER ADOPTING REPORT
                                       )   AND RECOMMENDATION OF
17         v.                          )   UNITED STATES MAGISTRATE
                                       )   JUDGE
18   MIKE KNOWLES, Warden,             )
                                       )
19                  Respondent.        )
                                       )
20                                     )
                                       )
21   _____

22          This Order Adopting addresses the Report and Recommendation issued
23   by now-retired Magistrate Judge Johnson on July 22, 2009, in order to address
24   more fully Petitioner's claim that insufficient evidence supports the gang
25   enhancements found true for his assault and possession of a firearm convictions,
26   discussed in Section III below.  For the reasons discussed below, and after a <u>de</u>
27   <u>novo</u> review of the Report and Recommendation, the Petition is denied and the
28   action is dismissed with prejudice.

## I.

On March 28, 2003, a Los Angeles County Superior Court jury convicted Petitioner Ramiro Quiles of assault with a firearm with the personal use of a firearm and possession of a firearm by a felon, both for the benefit of a criminal street gang, and of misdemeanor assault (CAL. PENAL CODE §§ 186.22(b)(1), 240, 245(a)(2), 12021(a)(1), 12022.5). (Reporter's Transcript ("RT") 1802-13; Clerk's Transcript ("CT") 280-84.)  The court sentenced Petitioner to 36 years in state prison.  (RT 2106-07; CT 331-33, 341-42.)  Petitioner appealed his conviction and the California Supreme Court denied review on August 18, 2004. (Lodgment Nos. 3-10.)  On October 13, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court which the court denied on July 19, 2006.  (Lodgment Nos. 11, 12.)

On August 12, 2006, Petitioner filed the present Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 in this Court.  The Court has reviewed the Petition pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  Under the AEDPA, a federal court shall presume that a

1  determination of factual issues made by a State court is correct, and Petitioner
2  has the burden of rebutting that presumption by clear and convincing evidence.
3  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to findings of
4  state appellate courts as well as trial courts.  Bragg v. Galaza, 242 F.3d 1082,
5  1087 (9th Cir. 2001) as amended, 253 F.3d 1150.

6       The Supreme Court has explained the standard of review under the
7  AEDPA as follows:

>       Under the "contrary to" clause, a federal habeas court may grant the
>       writ if the state court arrives at a conclusion opposite to that
>       reached by [the Supreme Court] on a question of law or if the state
>       court decides a case differently than [the Supreme Court] has on a
>       set of materially indistinguishable facts.  Under the "unreasonable
>       application" clause, a federal habeas court may grant the writ if the
>       state court identifies the correct governing legal principle from [the
>       Supreme Court's] decisions but unreasonably applies that principle
>       to the facts of the prisoner's case.

17  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389
18  (2000).  A state court's decision is an "unreasonable application" of Supreme
19  Court precedent if it is "objectively unreasonable" which "requires the state
20  court decision to be more than incorrect or erroneous."  Lockyer v. Andrade,
21  538 U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); Ortiz-Sandoval
22  v. Clarke, 323 F.3d 1165, 1169-70 (9th Cir. 2003).  Thus, "an unreasonable
23  application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694,
24  122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); accord Price v. Vincent, 538 U.S.
25  634, 643, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) (even where reviewing
26  court might find that error occurred, habeas relief is not warranted where state
27  court denial of claim is "at least reasonable").

28       Under the AEDPA, circuit law may be "persuasive authority for purposes

- 3 -

1   of determining whether a particular state court decision is an 'unreasonable
2   application' of Supreme Court law." Davis v. Woodford, 384 F.3d 628, 638
3   (9th Cir. 2004) (quotation omitted).   However, only the Supreme Court's
4   holdings need be reasonably applied by the state courts under the AEDPA.
5   Andrade, 538 U.S. at 71-72.

6        In order to resolve Petitioner's claims, all of which Petitioner raised on
7   direct appeal in State court, this Court will examine the explicated decision of
8   the California Court of Appeal rather than the subsequent one-line order from
9   the California Supreme Court because "[w]here there has been one reasoned
10  state court judgment rejecting a federal claim, [federal habeas courts should
11  presume that] later unexplained orders upholding that judgment or rejecting the
12  same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797,
13  803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).   For claim number three,
14  which Petitioner amended with citation to new authority when he raised it
15  again on State habeas review, this Court will also conduct an independent
16  review of the record. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17

18                                          II.

19        The California Court of Appeal found the following facts underlying
20  Petitioner's conviction:

21             On January 12, 2002, [Petitioner and co-defendant Rigoberto
22        Zuniga] attended a party on Manzanar in Pico Rivera.  They went
23        with Juan Rios, a Marianna Maravilla gang member.  There were
24        about 50 or 60 people at the party.  There was loud music.

25             At about 10:30 p.m., [Petitioner] approached, or bumped into,
26        Carlos Garcia.  Garcia was known to the Sheriff's Department as a
27        member of the Winter Gardens Gang.  According to Garcia,
28        [Petitioner] asked him where he was from, and Garcia replied that

                                         - 4 -

he was "not from anywhere." [Petitioner] then pulled out a handgun and fired five or six shots.  Garcia was shot in both legs.

Witnesses at the party gave the following accounts of Garcia's shooting:

Jose Orrante saw [Petitioner], who was wearing a hooded sweatshirt, grab a man by the throat, then pull out a black object which proved to be a gun.  Someone hit [Petitioner] on the head with a bottle, causing [Petitioner] to release the man he had been holding. [Petitioner] then fired at the man he had been holding.

[Edgar] Portocarrero told police that he saw a man in baggy pants accidentally bump into a man in a hooded sweatshirt. He saw the two begin to argue.  Then, the crowd moved back and Portocarrero saw that the man in the sweatshirt had a gun.  The man fired the gun five times and the man in the baggy pants fell to the ground.

Jose Quesada saw a man in a hooded sweatshirt holding another man by his shirt with one hand, causing the man to walk backwards.  The man in the sweatshirt had something, possibly a gun, in his hand.  Quesada heard five or six gunshots, but did not see the shooting itself.  He did not see the man in the sweatshirt get hit with anything.

Vincent Lopez also saw a man with a gun hold another man and force him to walk backwards.  Lopez heard a bottle break, then gunshots.

Diego Quiroz saw two men arguing.  One of the men, who possibly was dressed in a hooded sweater, was pointing a gun at the other man.  Someone broke a bottle over the head of the armed man.  Quiroz then heard gunshots.

- 5 -

When [Petitioner] began shooting, people started to move away from the area around him and the victim. Quiroz and Lopez were shot in the feet by Zuniga as they fled.

[Petitioner], Zuniga, and Rios were observed fleeing the party and getting into Rios' blue van. Police found the three men lying on the floor of the van. Two handguns were found in the vicinity of the van. Subsequent tests showed that four shell casings recovered from the scene were fired from one of the handguns recovered from the vicinity of the van.

Gunshot residue was found on the hands of both [Petitioner] and Zuniga.

Zuniga told police that he saw a person approach [Petitioner] and say "Fuck Maravilla." Six or seven individuals then came toward [Petitioner] and Zuniga, and [Petitioner] got hit in the head with a bottle. After a detective told Zuniga they had recovered guns outside the van and could recover fingerprints, Zuniga added that after [Petitioner] got hit over the head with a bottle, someone came toward him saying "Fuck Maravilla" and that he panicked, pulled out a gun and began firing. Zuniga admitted firing into the crowd multiple times.

Rios' account of events at the party varied. At one point, he told police that someone said something about [Petitioner's] tattoo and that someone else said that [Petitioner] was "from Maravilla, but he no gang bang." There was a fight and someone hit [Petitioner] on the head with a bottle.

At trial, Leonard Ayala, another Marianna Maravilla gang member, testified that he saw [Petitioner], Zuniga, and Rios at the January 12 party in Pico Rivera. He saw two other gang members

approach [Petitioner] and Zuniga and say "Fuck Mantequilla." Mantequilla is a nickname for Marianna Maravilla. According to Ayala, the men then pulled a gun on [Petitioner] and Zuniga. Ayala heard shots and fell to the ground for safety.

(Lodgment No. 8, at 3-4.)

## III.

Petitioner's first claim is that there was insufficient evidence supporting the gang enhancements found true against him. (Petition, at 5.) Under California law, as the jury in Petitioner's case was instructed, a jury may find true a gang enhancement where the prosecution proves that:

1.  The crime charged was committed for the benefit of, at the direction of, or in association with, a criminal street gang; and

2.  These crimes were committed with the specific intent to promote, further, or assist in any criminal conduct by gang members.

CAL. PENAL CODE § 186.22(b)(1); (RT 1227; CT 270-71).

Petitioner contends that there was insufficient evidence to prove either prong of the gang enhancement. The California Court of Appeal found sufficient evidence supported both elements; Petitioner acted for the benefit of a gang and he committed the criminal acts with the requisite specific intent, as follows:

Detective Nava's testimony about gang behavior, together with the testimony of one or more percipient witnesses, is more than sufficient to support the jury's finding on the gang allegation. Detective Nava testified that Garcia was a member of the Winter Gardens gang, [Petitioner] and Zuniga were members of the Maravilla Gang and that the two gangs did not get along.

[Petitioner] and Zuniga were outside their gang territory at the party.

Detective Nava testified that assaults are committed by gang members to try "to instill fear in the other gang or other members or other suspected members of other gangs. Also to gain respect for their neighborhood. Perhaps, also, to promote their gang because they are going outside their area to expand their territory. You know, to be able to go into other neighborhoods and feel that they are not to be messed with, too."

Garcia told police that [Petitioner] asked him where he was from and pulled out a gun after Garcia claimed not to be from anywhere. It is reasonable to infer that [Petitioner] asked this question believing that Garcia was a rival gang member, was not satisfied with Garcia's response and drew a gun and shot Garcia. It is also reasonable to infer that this was done to instill fear of his gang.

Ayala and Zuniga testified that one or more individuals approached [Petitioner] and said "Fuck Maravilla" or "Fuck Mantequilla" and that [Petitioner] pulled out a gun and began firing. It is reasonable to infer that [Petitioner] began shooting to uphold the honor of his gang. While Ayala and Zuniga said that the men who approached [Petitioner] had guns, the jury was free to reject that testimony.[FN2]

> [FN2.]The jury was free to believe the testimony and statements of other witnesses, such as Garcia, Orrante, and Portocarrero, which indicated that [Petitioner] had a gun but that the person [Petitioner] shot did not.

- 8 -

Zuniga acknowledged that he heard others say "Fuck Maravilla." It is reasonable to infer that he began shooting to uphold the honor of Maravilla. Although there was evidence that [Petitioner] and Zuniga were related by marriage, there was no evidence that it was a close relationship. Zuniga came to the party with Rios, a fellow gang member, as well as [Petitioner]. It is reasonable to infer that the three men were together because of gang ties and that Zuniga acted out of gang loyalty when he sought to assist [Petitioner], not family loyalty.

The fact that some witnesses testified that [Petitioner] was hit over the head with a bottle does not render the above evidence suspect or insufficient. Most witnesses' testimony showed that [Petitioner] was hit with the bottle after the gang related statements were made and after he pulled a gun.

(Lodgment No. 8, at 5-6.)

The standard for evaluating a constitutional claim of sufficiency of the evidence is whether "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original). All evidence must be considered in the light most favorable to the prosecution. <u>Id</u>. This standard is applied to the substantive elements of the criminal offense defined by state law. <u>Id</u>., 443 U.S. at 324. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u>, 443 U.S. at 319.

In order to establish sufficient evidence, the prosecution need not affirmatively "rule out every hypothesis except that of guilt." <u>Id.</u>, 443 U.S. at 326. Moreover, a reviewing court "faced with a record of historical facts that

- 9 -

1   supports conflicting inferences must presume – even if it does not affirmatively

2   appear in the record – that the trier of fact resolved any such conflicts in favor

3   of the prosecution, and must defer to that resolution." Id., 443 U.S. at 326.

4   Even where evidence is "relatively weak," it may be sufficient to support a

5   conviction. Jones v. Wood, 207 F.3d 557, 563 (9th Cir. 2000).

6         In Garcia v. Carey, 395 F.3d 1099, 1103-05(9th Cir. 2005), the Ninth

7   Circuit found insufficient evidence supported a gang enhancement where the

8   prosecution offered only the testimony of a gang expert who stated that the

9   defendant's gang was "turf-oriented" but did not explain how this related to the

10  robbery committed by Garcia.  Relying on Garcia, the Ninth Circuit this year

11  decided Briceno v. Scribner, 555 F.3d 1069, 1081 (9th Cir. 2009), in which it

12  held that the expert testimony of a police gang investigator, which dealt almost

13  exclusively in hypotheticals, was insufficient to establish that the defendant

14  committed the charged robberies with specific intent to benefit a criminal street

15  gang where there was no evidence of a connection between the robberies and

16  the defendant's gang.   Petitioner argues that under Garcia and Briceno, his

17  conviction cannot stand because there was no proof that his actions, in what he

18  calls a spur-of-the-moment melee at the party, benefitted the Maravilla gang or

19  that he, allegedly defending himself only after being struck by a bottle, intended

20  to benefit the gang with his actions.  (Objections, at 2-4.)

21        Petitioner is incorrect.  Under the AEDPA, this Court can only determine

22  the reasonableness of the State court decision.  See Juan H. v. Allen, 408 F.3d

23  1262, 1275 (9th Cir. 2005) ("In conducting our inquiry, we are mindful of the

24  deference owed to the trier of fact and, correspondingly, the sharply limited

25  nature of constitutional sufficiency review.") (quotation omitted).  Given the

26  evidence offered in Petitioner's trial, which differed in kind from that

27  introduced against Garcia and Briceno, it was reasonable for the State court to

28  determine that there was sufficient evidence to prove both that Petitioner's

- 10 -

1  actions were committed "for the benefit of, at the direction of, or in association

2  with" the Maravilla gang and that Petitioner acted with "the specific intent to

3  promote, further, or assist in any criminal conduct by gang members."

4      Specifically, evidence was introduced that Petitioner, a member of a turf-

5  oriented Hispanic gang, attended the party with at least two gang associates,

6  Petitioner and the gang associates were armed, the party was outside the

7  territory of the gang, the altercation began with comments regarding gangs

8  (someone asked Petitioner about his tattoos and/or Petitioner asked another

9  person where he was from, which was a question about gang affiliation), the

10  victim was a member of a rival gang, and Petitioner and his gang associates fled

11  together and hid in their van after the shooting. (See RT 36-54, 414-17, 421,

12  424, 438-39, 604-05, 619-24, 928-31, 936-41, 979, 994, 1046, 1061-62.)

13  Moreover, the prosecution's gang expert testified that, in his opinion, the crimes

14  were committed to benefit Maravilla because the crimes were committed in

15  concert by multiple armed Maravilla members in response to insults to

16  Maravilla, because they were committed outside Maravilla territory in a rival

17  gang neighborhood, which would  command greater respect for the gang and

18  instill fear in others, including in rival gang members, both of which would allow

19  Maravilla to move into new areas, and because the crimes may have been an

20  attempt to expand the Maravilla territory. (See RT 964-71.)

21      This is much more than the evidence introduced in Garcia and Briceno,

22  where the court found nothing to suggest that the defendants acted with the

23  intent to benefit their gangs. Compare Briceno, 555 F.3d at 1081 ("[E]vidence

24  of intent is wholly lacking: the individual robberies were not committed in Hard

25  Times gang territory or on the "turf" of a rival gang, neither Briceno nor Landin

26  made their gang membership known to the robbery victims, and, indeed, there

27  is no evidence whatsoever of any connection between the gang and the

28  robberies."); and see Mendoza v. Attorney General of State of Cal., 2009 WL

- 11 -

1    926814, *13 (E.D. Cal. April 3, 2009) (finding sufficient evidence for gang

2    enhancement where multiple gang members got into altercation with rival gang

3    members and gang names were mentioned); <u>Munguia v. Hedgpeth</u>, 2009 WL

4    2514188, *9 (C.D. Cal. Aug. 13, 2009)(noting that commission of a crime in

5    concert with other gang members is evidence that a defendant acted with

6    specific intent to promote or assist his gang).  In Petitioner's case, there was

7    sufficient evidence from which the jury rationally could infer that Petitioner's

8    actions were for the benefit of Maravilla and that Petitioner intended them as

9    such.

10         Although Petitioner would have had the jury interpret the evidence

11    differently, the State courts reasonably found that both elements of the gang

12    enhancement were supported by the evidence.  <u>Jackson</u>, 443 U.S. 319.  Thus

13    the State courts' denial of this claim was not an unreasonable application of

14    Supreme Court authority.  28 U.S.C. § 2254(d).

15

16                          **IV.**

17         Petitioner's second claim is that the trial court relied on improper factors

18    in sentencing him. (Petition, at 5-6.)  To the extent this claim differs from his

19    third claim, discussed below, it alleges only violations of State law, which cannot

20    form the basis of a successful habeas claim.  28 U.S.C. § 2254(d); <u>Estelle v.</u>

21    <u>McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); <u>see</u>

22    <u>also</u> <u>Mendez v. Small</u>, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has

23    the last word on the interpretation of state law.").

24

25                          **V.**

26         In his final claim for relief, Petitioner contends that his constitutional

27    rights were violated when the trial court imposed the upper sentence terms on

28    his assault conviction and firearm use enhancement even though the jury did

1   not determine the relevant facts supporting the upper terms.  (Petition, at 6.)
2   Petitioner argues that he is entitled to relief under Apprendi v. New Jersey, 530
3   U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (holding that
4   "[o]ther than the fact of a prior conviction, any fact that increases the penalty
5   for a crime beyond the prescribed statutory maximum must be submitted to a
6   jury, and proved beyond a reasonable doubt"), and Blakely v. Washington, 542
7   U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (holding that "the
8   'statutory maximum' for Apprendi purposes is the maximum sentence a judge
9   may impose solely on the basis of the facts reflected in the jury verdict or
10  admitted by the defendant.").  Since Petitioner filed his Petition, the Supreme
11  Court also decided Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856,
12  166 L. Ed. 2d 856 (2007), in which the Court found that under California law,
13  the middle, not the upper term, is the relevant "statutory maximum" for
14  Apprendi purposes, and therefore that a defendant is entitled to a jury finding
15  on any factor other than a prior conviction before being sentenced to an upper
16  term.  Cunningham, 549 U.S. at 274-75.

17          As a threshold matter, Respondent's argument that Petitioner's claim
18  improperly seeks retroactive application of a "new rule" of constitutional law,
19  in violation of Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d
20  334 (1989), is foreclosed by Butler v. Curry, 528 F.3d 624 (9th Cir.), cert.
21  denied, ___ U.S. ___, 129 S. Ct. 767, 172 L. Ed. 2d 763 (2008).  Butler held
22  that Cunningham did not announce a new rule of constitutional law under
23  Teague.  Butler, 528 F.3d at 639.  On the contrary, Butler held that Apprendi,
24  Blakely, and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160
25  L. Ed. 2d 621 (2005), established that sentencing schemes violate the
26  constitutional rights of defendants if those schemes (a) increase the statutory
27  maximum term (b) based on facts – other than the existence of a prior
28  conviction – found by a judge, rather than a jury beyond reasonable doubt.  See

1   <u>Butler</u>, 528 F.3d at 639.  Therefore, <u>Cunningham</u> can be applied to review the
2   merits of Petitioner's final claim.

3         The California Court of Appeal rejected Petitioner's claim when it found
4   that the trial court sentenced Petitioner to the upper terms based at least in part
5   on one proper aggravating factor.  (Lodgment No. 8, at 7-9.)  The California
6   Supreme Court denied review the same year without prejudice to any relief
7   which might be mandated upon finality of <u>People v. Black</u>, 35 Cal. 4th 1238,
8   29 Cal. Rptr. 3d 740 (2005), which ultimately held that California's sentencing
9   scheme was in compliance with the United States Constitution.  The California
10  Supreme Court denied Petitioner's renewed claim on habeas review again in
11  2006.   As noted, in 2007 the United States Supreme Court decided in
12  <u>Cunningham</u>, contrary to the outcome in <u>Black</u>, that California's sentencing
13  scheme was not in compliance with the federal Constitution.

14        Nevertheless, the State courts' denial of Petitioner's claim was not
15  contrary to or an unreasonable application of the retroactively-applied
16  <u>Cunningham</u> decision because Petitioner was sentenced to the upper terms
17  based on his prior conviction.  (<u>See</u> RT 2106-07; Lodgment No. 8, at 7-9.)  A
18  sentencing court may, in compliance with the Sixth Amendment, sentence a
19  defendant to the upper term where that decision rests on the "fact of a prior
20  conviction" even where a jury has not made the factual finding of the prior
21  conviction.  <u>Butler</u>, 528 F.3d at 645 ("[T]he fact of a prior conviction is the
22  only fact that both increases a penalty beyond the statutory maximum and can
23  be found by a sentencing court.").  Because under California law, "only one
24  aggravating factor is necessary to set the upper term as the maximum sentence,
25  . . . if at least one of the aggravating factors on which the judge relied in
26  sentencing [the petitioner] was established in a manner consistent with the
27  Sixth Amendment, [the petitioner's] sentence does not violate the
28  Constitution." <u>Id.</u>, 528 F.3d at 643.  Because Petitioner's upper terms were

1    imposed by the sentencing court at least partly based on the fact of Petitioner's

2    prior conviction, no due process violation occurred.[1]  Cunningham, 549 U.S. at

3    274-75; Butler, 528 F.3d at 643; 28 U.S.C. § 2254(d).

4         Any possible error, moreover, would be subject to harmless error analysis.

5    Butler, 528 F.3d at 648 (citing Washington v. Recuenco, 548 U.S. 212, 126

6    S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).  Habeas relief is appropriate only if a

7    sentencing error "had a substantial and injurious effect" on Petitioner's

8    sentence.  Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L.

9    Ed. 2d 353 (1993); Butler, 528 F.3d at 648.  "Under that standard," Butler

10   explained,

11        we must grant relief if we are in "grave doubt" as to whether the jury

12        would have found the relevant aggravating factors beyond a

13        reasonable doubt.  [Citation.]  Grave doubt exists when, "in the

14        judge's mind, the matter is so evenly balanced that he feels himself

15        in virtual equipoise as to the harmlessness of the error."  [Citation.]

16   528 F.3d at 648.  As noted above, one factor can support an upper-term

17   sentence.  Id.

18        There is little doubt, and surely not "grave doubt," that a reasonable

19   _____

20        [1]  It is possible that a State law error occurred in sentencing, as the California
     Court of Appeal explained.  (See Lodgment No. 8, at 7-9.)  The State court explained
21   that, under State law, the trial court could not rely on Petitioner's prior conviction in
     sentencing him to the upper terms, because the conviction was being used for another
22   purpose in sentencing.  (Lodgment No. 8, at 8-9.)  The prohibition on the "dual use"
     of aggravating factors is a State law one only, however.  Cunningham, 549 U.S. at
23   280-81 (noting State law "dual use" prohibition); CAL. PENAL CODE § 1170(b).
     Federal habeas relief is unavailable to remedy errors of State law.  28 U.S.C.
24   § 2254(d); Estelle, 502 U.S. at 67-68; Carey v. Musladin, 549 U.S. 70, 77, 127
     S. Ct. 649, 166 L. Ed. 2d 482 (2006) (holding that no relief is available under
25   AEDPA absent a violation of clearly established Supreme Court precedent); and see
     Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) (habeas petitioner "may not
26   transform a state-law issue into a federal one merely by asserting a violation of due
27   process.").

28

                                        - 15 -

1   factfinder would have found, beyond reasonable doubt, that at least one of the
2   aggravating factors permitted under State law existed, as found by the California
3   Court of Appeal:

4        We cannot agree with [Petitioner] that the victim vulnerability
5        factor was improperly used.  The trial court did speak of "victims"
6        in the plural, but this was clearly a slip of the tongue.  The trial
7        court noted that it had the prosecutor's sentencing memorandum
8        before it, and that document refers to only one victim, Carlos
9        Garcia.  We agree with the trial court that the victim was vulnerable.
10       As the sentencing memorandum noted, Garcia told Detective Nava
11       that [Petitioner] continued to fire at him after he fell to the ground.
12       A wounded victim on the ground is particularly vulnerable.

13                              *     *     *

14       We cannot agree with [Petitioner] that the violent conduct
15       finding could only have been based on the gun use and so was
16       improper.  [Petitioner] grabbed Garcia by the throat before the
17       shooting began.  This is violence over and above that involved in
18       using a firearm.

19       We also cannot agree with [Petitioner] that the fact that he
20       was on parole could not be an aggravating factor because the parole
21       was for his prior serious felony conviction, and a section 667,
22       subdivision (a) enhancement was imposed for that conviction.
23       Parole generally involves a limited period of time following a
24       person's release from prison.  Thus, this factor really concerns how
25       soon a felon commits the charged offense after being released from
26       prison.  We see no reason in law or logic to find that a person
27       cannot have his sentence increased for committing a crime soon
28       after being released from prison and receive an enhancement

1 | because his prior conviction was for a serious felony.

2 | (Lodgment No. 8, at 7-9; <u>see</u> <u>also</u> RT 2106-07)

3 |     Attacking a vulnerable victim is an appropriate aggravating factor under State law. CAL. R. CT., Rule 4.421(a)(3). And, the use of violence and a defendant's parole status also are aggravating factors under California rules. CAL. R. CT., Rule 4.421(1)(1), (b)(4). Keeping in mind that, under California law, "only one aggravating factor is necessary to set the upper term as the maximum sentence," <u>Butler</u>, 528 F.3d at 643, this Court finds any error harmless: any reasonable jury would have found at least one aggravating factor underlying each upper term sentence. <u>Brecht</u>, 507 U.S. at 637; <u>Butler</u>, 528 F.3d at 648; 28 U.S.C. § 2254(d).

    Accordingly, the Report and Recommendation is adopted and supplemented as stated herein.

DATED: _11-16-09_


VALERIE BAKER FAIRBANK
UNITED STATES DISTRICT JUDGE